# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDRICK ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-362** |
| **PONCHATOULA CITY, ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 26). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This case arises out a dispute between Plaintiff Edrick Roberts and his former employer, Defendant City of Ponchatoula, regarding his termination. Plaintiff alleges that he has narcolepsy with cataplexy[1], visual perceptual disorder/dyslexia[2], and attention deficit hyperactivity disorder (ADHD).[3] Plaintiff applied for a job with Defendant the City of Ponchatoula and completed a pre-employment medical exam on April 18, 2022 as part of

---

[1] In his Complaint, Plaintiff defines narcolepsy with cataplexy as "a chronic neurological disorder characterized by severe irresistible daytime sleepiness and sudden loss of muscle tone." Doc. 1-1 at 3.

[2] In his Complaint, Plaintiff defines Visual Perceptual Disorder/Dyslexia as "a learning disorder which disrupts the way a person processes written language." Doc. 1-1 at 3.

[3] In his Complaint, Plaintiff defines Attention Deficit Hyperactivity Disorder as "a neurodevelopmental disorder characterized by inattention, impulsivity and hyperactivity." Doc. 1-1 at 3.

Defendant's policies and procedures, that deemed him qualified to start work. On April 25, 2022, he started working as a "Laborer" for Defendant.

On July 6, 2022, Plaintiff and his mother had a meeting with the Human Resources Manager of the City of Ponchatoula and the Mayor's Administrative Assistant to discuss Plaintiff's alleged disabilities and struggles at work, as well as possible accommodations. Plaintiff's mother explained his disabilities and struggles, and Plaintiff requested two accommodations: (1) assistance in completing outstanding employment forms because of his dyslexia, and (2) a change in his schedule due to his narcolepsy with cataplexy. Plaintiff claims that he was never given any assistance with completing the forms and his request for a change in schedule was denied without an offer of any reasonable alternatives.

Plaintiff continued to work following this meeting and had a narcoleptic seizure on October 13, 2022 while at work. After this incident, Plaintiff went to the Tulane Hospital Emergency Department and was cleared to participate in all work activities. On November 3, 2022, Plaintiff followed up with Dr. John Freiberg at the Tulane Medical Center. Three week later, on November 24, 2022, Plaintiff was on call and claims to have overslept due to his altered medication following his seizure. On November 28, 2022, Plaintiff went to work, but in the afternoon, he was notified by the HR Manager that he had been terminated due to tardiness and absenteeism.

On January 31, 2024, Plaintiff filed suit against Defendant and a still-to-be-identified insurer in the Twenty First Judicial District Court in Tangipahoa Parish. Defendant timely removed the action to this Court on February 12, 2024. In his Complaint, Plaintiff alleges that Defendant City of Ponchatoula violated the Americans with Disabilities Act[4] and Louisiana

---

[4] Specifically, 42 U.S.C. §§ 12112(a) and (b)(5)(a).

Employment Discrimination Law ("LEDL")[5] when they discriminated against and wrongfully terminated him.[6] Now before the Court is Defendant City of Ponchatoula's Motion for Summary Judgment. Plaintiff opposes.[7]

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[11] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[12] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[13]

---

[5] La. R.S. § 23:323.
[6] Defendant does not dispute its status as a covered entity under the ADA.
[7] Doc. 27-1
[8] Fed. R. Civ. P. 56.
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[10] *Id.* at 248.
[11] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[12] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[13] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[14] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[16]

## LAW AND ANALYSIS

In its Motion, Defendant asks the Court to grant judgment in its favor, alleging that Plaintiff has not established the elements necessary to prove a valid claim under the LEDL or the ADA for discrimination or failure to accommodate.[17] In his opposition, Plaintiff argues that genuine issues of material fact preclude summary judgment on each of his claims.

### I.  ADA Discrimination Claim

"The ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment."[18] Such discrimination includes "not making reasonable accommodations to the known physical or mental

---

[14] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[15] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[16] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[17] In his response, Plaintiff intimates that he is also bringing forth a retaliation claim and a failure to engage in the interactive process claim. Doc. 27-1 at 1.

[18] Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017) (quoting Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original)).

4

limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]"[19]

"To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."[20] If Plaintiff succeeds in establishing a prima facie case of discrimination, Defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.[21] If Defendant meets its burden, then the burden of production shifts back to Plaintiff to "offer sufficient evidence to create a genuine issue of material fact . . . that the defendant's reason is not true, but instead a pretext for discrimination."[22]

### A. Disability

"[T]he threshold element of a prima facie showing of discrimination under the ADA is a showing that the plaintiff either is, or is regarded as being disabled. Failure to establish an actual or perceived disability is thus fatal to a plaintiff's case."[23] The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such

---

[19] 42 U.S.C. § 12112(b)(5)(A). A plaintiff may bring a failure to accommodate claim separately from a general ADA discrimination claim. Critically, such a claim also requires that the plaintiff is a qualified individual with a disability. *See* Leggio v. Ochsner Clinic Found., No. CV 22-1232, 2023 WL 2955310, at *7 (E.D. La. Apr. 14, 2023) (citing Thompson v. Microsoft Corp., 2 F.4th 460, 467 (5th Cir. 2021)).

[20] Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999).

[21] *See Leggio*, 2023 WL 2955310, at *7 (citing McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000)) The burden-shifting framework applies here because the case is one involving only circumstantial evidence. *See id.* at * 7.

[22] E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 702 (5th Cir. 2014) (quoting Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)).

[23] *McInnis*, 207 F.3d at 280 (5th Cir. 2000).

individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[24] "Major life activities" include working, seeing, hearing, speaking, and breathing,[25] as well as sleeping and thinking.[26] To determine whether a major life activity is substantially limited by an impairment, courts consider "(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact."[27] "The ADA requires an individualized inquiry to determine whether a particular plaintiff is disabled."[28]

Plaintiff claims that he is disabled under the ADA because he suffers from ADHD, dyslexia, and narcolepsy with cataplexy.[29] The National Institute of Neurological Disorders and Stroke ("NINDS") describes narcolepsy as "a chronic neurological disorder that affects the brain's ability to control sleep-wake cycles . . . [that] can greatly affect daily activities . . . [I]t can interfere with emotional well-being, social interactions, and the ability to think clearly, which can affect school, work, and social life."[30] NINDS describes cataplexy as

---

[24] 42 U.S.C. § 12102(a).

[25] 42 U.S.C. § 12102(2)(A).

[26] E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 616 (5th Cir. 2009).

[27] Pyor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998). The ADA does not define "major life activities" or "substantially limits," but courts may look to the EEOC regulations for guidance. See Ellison v. Software Spectrum, Inc., 85 F.3d 187, 190 (5th Cir. 1996).

[28] *Zenor*, 176 F.3d at 860 (5th Cir. 1999).

[29] Plaintiff did not link any of his claims under the ADA or LEDL to his alleged ADHD. As such, the Court will not address it here.

[30] NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, NARCOLEPSY (January 2025), https://www.ninds.nih.gov/health-information/disorders/narcolepsy. Federal Rule of Evidence 201 provides that the Court "may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). "When it comes to taking judicial notice of websites, it is well established in the Fifth Circuit that courts may take judicial notice of *governmental* websites," such as the one cited here. *Mateo v. TA HSIN, Inc.*, No. 7:19-CV-419, 2021 WL 3931915, *10 (S.D. Tex. Feb. 19, 2021) (citing Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005)).

a symptom of narcolepsy that "leads to sudden episodes of muscle weakness," has varying degrees of severity, and may occur only once or twice or daily.[31]

The first issue, then, is whether Plaintiff put forth sufficient evidence to show that his narcolepsy with cataplexy significantly restricted one or more of his major life activities, including work. Plaintiff and Defendants each produced the progress note from Plaintiff's November 3, 2022 visit with Dr. John Freiberg at Tulane Medical Center that followed Plaintiff's narcoleptic seizure the month before.[32] Dr. Freiberg noted ADHD and Anxiety under "Past Medical History," and in the "Assessment" section that Plaintiff was following up regarding his "narcolepsy and cataplexy."[33] In the "Assessment" section, Dr. Freiberg wrote the following:

> . . . Most days [Plaintiff] does pretty well on his current [prescription regimen] . . . The other day he had a terrible episode at work. He got weak in the knees and fell. He was drooling and difficult to arouse. When he came to he was slightly mixed up. This type of episode is [sic] happened on multiple occasions previously. . . .[Plaintiff] reports that he generally sleeps pretty good at night without much disruption. He reports he does not suffer from anxiety or depression but does have some frustration due to his medical condition. He does not have any focal weakness or clumsiness. No sensory disturbance. No memory loss. No dizziness or vertigo. No unusual headaches. No speech changes. No blurry or double vision. . .[34]

An excused absence form and work excuse form accompany this progress note. The former shows an "X" mark near "NO RESTRICTIONS" and states that Plaintiff was cleared to return to work on November 7, 2022, but the form was not filled out until January 11, 2024.[35] The latter shows an "X" mark near

---

[31] *Id.*
[32] Docs. 26-5 and 27-6.
[33] Doc. 26-5 at 3–4.
[34] *Id.* at 4.
[35] *Id.* at 1.

the phrase, "Patient is cleared to participate in all school/work activities" and was signed on the same day that Plaintiff experienced his seizure.[36]

Citing these forms, Defendant argues that because Plaintiff cannot show that he had any limitations at the time he alleges that he was discriminated against, it is entitled to judgment as a matter of law. Plaintiff counters that the documentation does not negate the fact that Plaintiff's diagnosis of narcolepsy with cataplexy impacts his ability to maintain a regular work schedule. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has shown that, at least once, that he has experienced symptoms of narcolepsy with cataplexy, including extreme daytime sleepiness and sudden loss of muscle control, while working for Defendant. As such, the Court finds that Plaintiff has proven he has a disability under the ADA.

## B. Qualified Individual

Having met the threshold of a disability, Plaintiff must show that he is a qualified individual. A qualified individual is one that could "'perform the essential functions of [his] job in spite of his disability' or, if he could not, that 'a reasonable accommodations of his disability would have enabled him to perform the essential functions of the job.'"[37]

Defendant asserts that Plaintiff is not a qualified individual because he is unable to perform the essential functions of his job, namely reporting to work on time or reporting to work at all. Plaintiff fails to argue that he is a qualified individual under the ADA and does not address his excessive absences in his Opposition. Further, Plaintiff only alludes to his tardiness in connection to his alleged accommodation request, stating that "any alleged deficiency was due

---

[36] *Id.* at 2.
[37] *LHC Grp.*, 773 F.3d at 697 (quoting Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996)).

8

to Defendant's failure to clarify requirements" for receiving an accommodation when it failed to engage in the interactive process with him.[38] As such, the Court will focus on the second prong of this element in its analysis, namely, whether reasonable accommodations of Plaintiff's disability would have enabled him to perform the essential functions of his job.

"When deciding whether a person with disabilities is qualified for a particular job, the decision maker must establish which job or position is actually at issue"[39] because an essential function "bear[s] more than a marginal relationship to the employee's job."[40] The Court begins by noting that Plaintiff has offered no evidence detailing what his position as "Laborer" for Defendant entailed. The only remote description of the type of work that Plaintiff performed can be found in the "Memo for Personnel File" that noted Plaintiff "had been moved from the Street Dept. to the Sewer Dept."[41] Further, the only relevant evidence in the record as to whether Plaintiff was qualified can be found in Plaintiff's state court Petition, where he stated that he was

---

[38] Doc. 27 at 5. Importantly, failing to engage in the interactive process is not a per se violation of the ADA. *See* Picard v. St. Tammany Par. Hosp., 423 F. App'x 467, 469 (5th Cir. 2011) (holding that the lower court did not abuse its discretion when it refused a requested jury instruction that failure to engage in the interactive process once accommodation was requested amounted to a per se violation of the ADA).

[39] EMPLOYMENT COORDINATOR, 5 EMPLOYMENT PRACTICES § 9:44, Westlaw (database updated April 2025).

[40] Chandler v. City of Dall., 2 F.3d 1385, 1393 (5th Cir.1993), *holding modified on other grounds as discussed in* Kapche v. City of San Antonio, 304 F.3d 493 (5th Cir. 2002) (per curiam).

[41] Doc. 27-3 at 3. The Memo for Personnel File only provides information about the Street Dept. job which entailed working in tall, grassy areas where there were snakes. Because Plaintiff moved from this position before the time of the alleged discrimination, this information is not relevant to the Court's analysis of whether Plaintiff was a qualified individual.

9

"deemed to be well qualified for employment" following the pre-employment medical evaluation completed in April 2022.[42]

Considering the Petition and instant Motion, the functions at issue in this case appear to be those relating to most jobs: timeliness and attendance.[43] "Physical presence at or by a specific time is not, as a matter of law, an essential function of all employment. While a timely arrival is normally an essential function, a court must still conduct a fact-specific inquiry, drawing all inferences in favor of the non-moving party."[44] Attendance is usually an essential function of most jobs.[45] Courts can look to things like the employer's policies regarding attendance to glean whether it is an essential function.[46] "The ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability."[47] Plaintiff's request for a later start time and deposition testimony that Plaintiff was written up for tardiness indicate that timely arrival and attendance were indeed essential

---

[42] Doc. 1-1 at 3. Importantly, though, one's status as a qualified individual is not static. Burden v. Southwestern Bell Tel. Co., L.P., No. Civ.A. 5:04-CV-159-C, 2005 WL 2444622, at *10 (N.D. Tex. Oct. 3, 2005).

[43] *LHC Grp.*, 773 F.3d at 697 (citing *Chandler*, 2 F.3d at 1393).

[44] EMPLOYMENT COORDINATOR, 5 EMPLOYMENT PRACTICES § 9:47, Westlaw (database updated April 2025) (citing McMillan v. City of New York, 711 F.3d 120 (2d Cir. 2013)).

[45] *See id.* ("[R]egular and predictable attendance is an essential function of a job, and those who cannot report to work regularly because of their disability are not qualified individuals with a disability.")

[46] *See* Weber v. BNSF Ry. Co., 989 F.3d 320, 326 (5th Cir. 2021) (finding that the employer's policy regarding attendance, including consequences for failing to meet the guidelines, suggested that it was an essential function of the employee's position as a dispatcher).

[47] EMPLOYMENT COORDINATOR, 5 EMPLOYMENT PRACTICES § 9:47, Westlaw (database updated April 2025) (citing Fisher v. Vizioncore, Inc., No. 10-3985, 2011 WL 2883292 (7th Cir. 2011)); *see also* Hypes v. First Commerce Corp., 134 F.3d 721, 727 (5th Cir. 1998) (holding that, even if plaintiff's absences were linked to his alleged disability, plaintiff was still not a "qualified individual" for ADA purposes because (1) attendance was an essential function of his job and (2) plaintiff failed to show that he could have attended work as required even with the requested accommodation).

functions of Plaintiff's position. As such, Plaintiff has not shown that he could perform the essential functions of his position despite his disability.

Next, Plaintiff must show that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job. The ADA defines "reasonable accommodations" to include, *inter alia*, "part-time or modified work schedules."[48] In his Opposition, Plaintiff points to a Memo for Personnel File and Plaintiff's own deposition testimony. In the latter, Plaintiff states that he asked for flexibility with his schedule because of his sleep disorder. This is supported by the Memo where the HR Manager wrote that Plaintiff's mother told her that "[Plaintiff] has a sleep disorder that makes it difficult to get to work on time."[49] Plaintiff asserts that Defendant did not provide these accommodations, and Defendant does not argue that it did.

Critically, though, Plaintiff offers no evidence as to how a later start time would accommodate the disability of narcolepsy or would be reasonable in consideration of his position. Plaintiff has failed to direct the Court to any evidence suggesting that a cataplexy event or bouts of sleep would occur at any regular and predictable time even if Plaintiff was allowed to come in later.[50] He does not show, for example, that his cataplexy event at work in October 2022 was caused by his unaccommodated work schedule or would not have occurred had he been on a different schedule.[51] Even if the Court were to find

---

[48] 42 U.S.C. § 12111(9)(B).

[49] Doc. 27-3 at 2.

[50] *See* Clark v. Charter Commc'ns, L.L.C., 775 F. App'x 764, 767 (5th Cir. 2019) (affirming lower court's finding that the plaintiff with narcolepsy was not qualified because her requested accommodation for breaks throughout the day did not prevent her from falling asleep too often to perform the essential functions of her role.)

[51] *See* Dooley v. Abbott Lab'ys, No. 07 C 7249, 2009 WL 1033600, at *7 n.2 (N.D. Ill. Apr. 17, 2009) In *Dooley*, the court stated that it found that the employer's requirement that the plaintiff with narcolepsy "select a set start time and allowing her to select the late start time was not an unreasonable accommodation." *Id.* There, though, the court knew

that coming into work at a specific time is not an essential function of Plaintiff's job as Laborer, the Court can find no evidence to support the supposition that Plaintiff's requested accommodation of coming in later would remedy his inability to come in at all or stay awake the entire day without experiencing a cataplexic event.[52] As such, the Court finds that Plaintiff is not a qualified individual under the ADA, and therefore cannot pursue discrimination, failure to accommodate or failure to engage in the interactive process claims against Defendant.[53] Accordingly, summary judgment in favor of Defendant as to those claims is appropriate.

---

significantly more about the plaintiff's position and its essential functions than the Court does here. Accordingly, the Court finds the following helpful:

> There is no evidence, for example, that on a day when the defendant starts early, she can work the entire day without incident or on a day when she starts later, she can work the entire shift without incident. It would seem that her disability would manifest itself throughout the day regardless of the start time. Instead, it appears that the parties have assumed that the condition makes it only difficult to start work at a set time each day, yet that assumption does not appear to be consistent with the disability.

*Id.*

[52] Having found that Plaintiff is not a qualified individual, the Court need not consider Plaintiff's disabilities of ADHD or dyslexia in its analysis of Plaintiff's prima facie case. *See Burden*, 2005 WL 2444622, at *10 ("Fifth Circuit precedent requires that a plaintiff be 'otherwise qualified' at the time of the complained-of employment action.").

[53] An element of each of these claims is that the plaintiff is a qualified individual. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) ("[T]he ADA's regulations state that "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation" in order to craft a reasonable accommodation."); *see also Leggio*, 2023 WL 2955310, at *7. The Court also notes that even if Plaintiff could somehow be found to be a qualified individual and could show that he was terminated because of his disability, Defendant cites the legitimate reasons of absenteeism and tardiness for terminating Plaintiff. "There is no legal obligation to 'accommodate' conduct, as opposed to a disability. The ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." EMPLOYMENT COORDINATOR, 5 EMPLOYMENT PRACTICES § 9:52, Westlaw (database updated April 2025). "If the employer can articulate a legitimate non-discriminatory reason for the adverse employment action, the *McDonnell Douglas* burden-shifting framework falls away and the issue becomes discrimination *vel non*."[53] E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 615 (5th Cir. 2009) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000)). Further, Plaintiff has produced no evidence "that tends to show that the

## II. ADA Retaliation

In his Opposition, Plaintiff states that he is also bringing a retaliation claim against Defendant. To establish his prima facie case of retaliation under the ADA a plaintiff must show that:

> (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.[54]

Assuming that Plaintiff and his mother's comments at the HR meeting in July 2022 regarding what might be helpful to Plaintiff amount to an actual request for the accommodations of a later arrival time and help with the completion of certain documents, the Court finds that Plaintiff satisfies the first element here because requesting an accommodation is a protected activity.[55] Further, it is undisputed that Defendant terminated Plaintiff. As such, Plaintiff has established the second element because termination is an adverse employment action under the ADA.[56]

### A. Nexus

---

employer's articulated reason for the adverse employment action was pretextual." The only evidence that could possibly be relevant here is an email from his mother written to the Mayor wherein she expresses concerns about the HR Manager's attitude during the July 2022 meeting. The Court finds that this is not sufficient to show pretext in light of Defendant's legitimate, non-retaliatory reasons for terminating Plaintiff.

[54] Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013).

[55] *See* Tabatchnik v. Cont'l Airlines, 262 F. App'x 674, 676 (5th Cir. 2008) ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity.").

[56] *See LHC Grp.*, 773 F.3d at 700 (5th Cir. 2014) ("It is undisputed that [employee] suffered an adverse employment action-namely, termination.")

13

The critical question here is if Plaintiff shows "that the adverse action[s] would not have occurred 'but for' the employer's retaliatory motive."[57] "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."[58]

Plaintiff cites both the close timing between his requested accommodation and his termination and Defendant's departure from its handbook as proof of a causal connection between the activity and the adverse action. Defendant asserts that Plaintiff was fired for legitimate reasons including tardiness and absenteeism, and that it could not accommodate Plaintiff because he did not submit the forms required for such an accommodation.

"A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'"[59] This temporal proximity must be "very close,"[60] with the Fifth Circuit finding that up to four months may qualify[61] as sufficiently close, but five months may not.[62] Evidence of a causal connection "may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures."[63]

Considering Plaintiff's termination, it appears that Plaintiff requested accommodations on July 6, 2022 and was terminated almost five months later on November 28, 2022. As such, the Court finds that these two events are not

---

[57] *Feist*, 730 F.3d at 454 (citing Seaman v. CSPH, Inc.*,* 179 F.3d 297, 301 (5th Cir.1999)).
[58] *Id.* (quoting Long v. Eastfield College, 88 F.3d 300, 308 (5th Cir. 1996).
[59] *Id.* (quoting McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007)).
[60] Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001).
[61] Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001).
[62] Raggs v. Miss. Power & Light Co.*,* 278 F.3d 463, 472 (5th Cir. 2002).
[63] *Feist* at 454-55.

sufficiently close enough to suggest pretext. Also, while Plaintiff points to Defendant's alleged failure to follow its handbook as evidence of pretext, the section they refer to relates to disability accommodation, not termination policies and procedures.[64]

Without more, the Court finds that Plaintiff cannot establish a prima facie case of retaliation under the ADA. Accordingly, summary judgment in favor of Defendant as to Plaintiff's retaliation claim is appropriate.

## III.  LEDL Claim

Plaintiff also brings a state law claim for violation of the LEDL. Louisiana Revised Statutes § 23:323 provides that "[n]o otherwise qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment." "[C]laims brought under the LEDL are analyzed using the same framework and precedent as ADA claims."[65] As such,

---

[64] The latter was not proffered to the Court. Even if Defendant did not follow the procedure outlined in its handbook regarding termination, Defendant stated a legitimate, non-retaliatory reason for its decision to terminate Plaintiff when it stated that Plaintiff was fired for excessive absenteeism and tardiness in violation of Defendant's policies. *See* EMPLOYMENT COORDINATOR, 5 EMPLOYMENT PRACTICES § 9:47, Westlaw (database updated April 2025) (citing Fisher v. Vizioncore, Inc., No. 10-3985 2011 WL 2883292 (7th Cir. 2011)). This shifts the burden back to Plaintiff who cannot demonstrate that Defendant's reasons were actually pretext for retaliation. Plaintiff's "evidence [of pretext] is substantial if it "is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Jan. v. City of Huntsville, 74 F.4th 646, 654 (5th Cir. 2023). Plaintiff has not offered any evidence to suggest that these valid reasons for dismissal are pretextual; he conceded in his deposition that he was regularly late for work and provides nothing to show that he was not excessively absent. Plaintiff only stated in his deposition that he had never "no-call[ed], so-show[ed]," but said nothing as to his absences, generally. Doc. 26-4 at 6. This evidence, or lack thereof, is not substantial.

[65] Johnson v. JP Morgan Chase Bank, N.A., 293 F. Supp. 3d 600, 615 (W.D. La. 2018) (citing Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274 (5th Cir. 1989)); Scott v. Turner Indus. Grp., LLC, No. 09-872, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2021) ("The ADA and LEDL provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.")). *See also* Baker v. FedEx Ground Package Sys. Inc., 278 F. App'x 322, 327 (5th Cir. 2008) ("We look to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws.").

"because the Louisiana Employment Discrimination statute is essentially patterned after the ADA, the result of this Court's analysis under either statute must, necessarily, be the same."[66] Since this Court found that Plaintiff failed to failed to make a prima facie case of discrimination under the ADA, this Court likewise finds that Plaintiff has not made a prima facie case under the LEDL. Accordingly, summary judgment in favor of Defendant regarding Plaintiff's LEDL claim is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 25th day of April, 2025.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**

---

[66] Mincey v. Dow Chem. Co., 217 F. Supp. 2d 737, 742 (M.D. La. 2002).